## Stewart v. Clark, Chief of the Bureau of Building Inspection.

*Building law—Private courts—Width of street therein—Acts of April 21, 1855, and May 3, 1909—Philadelphia Ordinance of April 8, 1890.*

1. Section 6 of the Act of April 21, 1855, P. L. 264, applies to both private and public courts or streets, and if private courts fulfill the conditions as to width, there is no violation of the section.

2. The Philadelphia Ordinance of April 8, 1890, Ord. 124, and its Amendment of 1906, Ord. 70, refer only to public streets, and do not relate to structures erected on private courts or ways.

3. The Act of May 3, 1909, P. L. 416, has no application to private rights of way; *i. e.*, to courts or streets, the right to the use of which is reserved to the owners or occupants of properties abutting thereon and which are not intended to be used by the general public.

Petition for mandamus, answer and demurrer. C. P. No. 1, Phila. Co., Dec. T., 1922, No. 10208.

*Bell, Kendrick, Trinkle & Deeter,* for plaintiff.

*Edgar S. McKaig,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for defendant.

McDevitt, J., March 9, 1923.—This cause came on to be heard on petition for writ of mandamus, answer and demurrer.

This controversy arises out of the following undisputed facts:

The plaintiff, Frank B. Stewart, was engaged by David Coon, the owner of a plot of ground fronting on South 22nd Street, between Walnut and Locust Streets, to erect twenty houses on said plot of ground, the said houses being erected around a roadway or courtyard which opens on to and runs through from 22nd Street to Van Pelt Street, forty feet wide at the western end and narrowing to twenty-five feet at the eastern end. The houses are to be built on an old English style of architecture and to form what the architect calls an "English Village." The plans and specifications show that the structures are to be modern in every respect, even to the point of being luxurious in having heat from a central plant and a continuous supply of hot water. The courtyard is to have shrubbery, flagstone walks and a road. Provision is made for janitor service, gardener service and a private watchman. No objections whatever were raised, or could be raised, against the fitness of the structures for living purposes.

When application was made by the plaintiff, Frank B. Stewart, on or about Feb. 16, 1923, for a permit to proceed with the erection of the aforesaid structure, the permit was refused by the defendant, Edwin Clark, Chief of the Bureau of Building Inspection of the City of Philadelphia, and it was stated that the interpretation placed by the bureau upon section 6 of the Act of 1855 was that new buildings could be erected only upon *public* streets, courts or alleys, and the permit was refused.

Section 6 of the Act of April 21, 1855, P. L. 264, 265, reads as follows:

"Section 6. That no new dwelling-house, or other building within said city, shall front upon any street, alley or court which shall be of less width than twenty feet, or without being made to recede, so that such street, alley or court shall be of that width, the buildings on each side equally receding; the damages for which widening shall be assessed and paid to the owner in manner provided by law in case of opening new streets; every new dwelling-house shall also have an open space attached to it in the rear or at the side, equal to at least twelve feet square, and no building of any kind shall be permitted to be erected on any street, court or alley hereafter to be laid out, or if laid

out and wholly unimproved by brick or stone buildings before the passage of this act, of a less width than twenty-five feet."

The true intent and meaning of this law is free from difficulty. Its object is to protect the lives and health as well as to promote the comfort of inhabitants of the city. A liberal view should, therefore, be taken of its several provisions in furtherance of the important results which it was clearly intended to advance. More especially is it to be regarded as designed to protect that class of our citizens who live in courts and alleys, and who must seek a home for themselves and their families in locations near to the place of their employment and to find small tenements in the built-up portion of the city, where property is valuable and where economy in ground and cost of building are essential considerations for the landlord as well as for the tenant. In legislating upon this subject, of providing homes for those who are in moderate circumstances, sight should not be lost of the fact that it is a question between small separate houses, with low rents, and large tenement-houses which will accommodate a number of families. In Philadelphia, the former has been followed, and the early and recent legislation for this city shows how constantly it has been adhered to. The general assembly has consistently intervened to protect, in this respect, the health of a large class of our citizens. Such intervention cannot justly be regarded as an unauthorized exercise of power. The use of private property is, to a great extent, under their control: In re Perry's Court, 10 Phila. 27 (1873).

The view of the courts with respect to the intent of the act is stated in Eichel *v.* Zimmerman et al., 17 Phila. 290 (1884), where the plaintiff proposed to erect on a lot fronting on Lawrence Street six houses on each side of an eight feet alley running through the centre of the lot from Lawrence Street. The court denounced this plan, saying that the act was intended to prohibit absolutely the erection of such structures as the plaintiff proposed, which would be destitute of sunlight and fresh air, but, at the same time, the court indicated that if the courtyard had been sufficiently wide there would have been no objection, though it would have appeared to have been privately owned.

It is clear that the act meant to deal with private courts as well as public courts, and if the private courts fulfill the conditions as to width, the erection of a structure thereon is not a violation of this section of the act.

The defendant contends, also, that the City Ordinance of April 8, 1890, and its Amendment of April 2, 1906, prevent the issuing of permits for the structures proposed in this case.

The Ordinance of 1890 provides as follows:

"Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That from and after the passage of this ordinance, no street hereafter to be opened shall be accepted or placed upon the plans of the city that is of less width than thirty feet, and in no case shall the street be so placed unless it shall run from one public street to another, and in a straight line: Provided, that this ordinance shall not be construed to repeal the existing ordinance fixing the widths of streets in the 22nd Ward at not less than forty feet.

"Section 2. It shall be unlawful for the Board of Building Inspectors, Department of Public Works, or any bureau under it or any official of the city, either to issue, cause or allow to be issued, any permit or permits for the erection of any building or buildings, or for the introduction of gas, water, sewer or drains, or to make surveys or give lines, or in any manner to countenance, authorize or permit the erection of any building or buildings fronting

2 D. & C.

Stewart *v.* Clark, Chief of the Bureau of Building Inspection.

on any street unless said street shall be of not less than thirty feet in width, as provided in section 1 of this ordinance or on the city plan, and all of said streets shall be continuous and run in a straight line from one public street to another."

"Forty feet" is substituted by the Amendment of April 2, 1906, for "thirty feet."

This ordinance refers only to streets, and does not relate to structures erected on courts, or ways, that are privately owned.

The defendant has also urged the Act of May 3, 1909, P. L. 416, which reads as follows:

"Section 1. Be it enacted, etc., That the councils of all cities of the first class are hereby authorized and directed to place on the city plan of public streets of such cities all streets which shall have been laid out and opened for twenty-one years, and which are less than thirty feet in width, or have dead ends, or which do not extend in a straight line from one street to another; whereupon such streets shall become public highways; and all acts or parts of acts inconsistent herewith be and the same are hereby repealed."

The court is unable to see any connection between the act cited and the case at bar. It is enabling legislation that has the same force and effect as dedicating a street or way to the public use by the unrestricted use of the same for twenty-one years.

Did this act apply to the facts before the court, it would apply with equal force to any private way through private property. It might as well be argued that the driveways so common in the rear of apartment-houses and used for deliveries to the residents thereof are public highways or streets. It is true the barriers, be they gates or chains, are not always in place, but their presence and the character of the driveway is mute evidence of its privacy. There is neither spoken nor presumed invitation to enter or use such ways except to those having business therein.

There is no ordinance or act of assembly which prevents the erection on private ways of such structures as are proposed in this case.

The court or way proposed here is not intended to be a street nor an enclosed court, but is a private right of way, the right to the use of which is reserved for the owners of the properties facing thereon, and is not intended for nor to be used by the general public.

Legislation by the general assembly and by city councils has been consistent, and all in an effort to make the city beautiful, as well as dwelling-houses sanitary, safe and comfortable. Were there any doubt as to the real character of the court upon which the proposed houses will face, such doubt should be resolved in favor of a development that will enhance the beauty of this locality, with the hope that its popularity and the desirability of such communities may lead to similar developments in other neighborhoods. While the first of its kind in this municipality, and unique, perhaps, for that reason, such developments are not strange in other municipalities and should be encouraged rather than discouraged. In the interest of public policy, is it not better to encourage such settlements and promote such developments than to permit unsightly, unsanitary and uncomfortable tenements to be erected in such neighborhoods, when all that it is necessary for them to do is to comply with the building restrictions and select sites upon any highways of the proper dimensions?

As the learned Assistant City Solicitor has said, the aristocratic abodes of to-day become the slums of to-morrow. The court recognizes no such community as slums, but the reverse of the Assistant City Solicitor's contention

is also true; that the deserted, dilapidated and sometimes congested sections of to-day become the residences of the elite and fastidious to-morrow. Social distinctions have no more merit in defining and determining building restrictions for different neighborhoods than they have in establishing class distinctions, and what is good for the unfortunate residents of the congested sections will be just as strictly applied to the neighborhoods patronized by the socially prominent. A street is a street, no matter where found nor the direction in which it runs, and a street can only be a public thoroughfare or highway in a city or village. It must be for public use, and "public use" has been many times defined as an indefinite or unrestricted use. It is open to the masses and is not for the restricted few.

The court, therefore, finds:

1. That section 6 of the Act of April 21, 1855, P. L. 264, has been complied with.

2. That the Ordinance of Philadelphia of April 8, 1890, page 124, and its supplements, do not apply to such private roads or ways as the proposed structures in this case are to be erected around.

3. That there is no law or ordinance to prevent the erection of buildings of the character proposed by the plaintiff on private ground in the City of Philadelphia.

4. That the Act of May 3, 1909, P. L. 416, does not apply to private ways, but only to streets.

### *Decree.*

And now, to wit, March 9, 1923, upon consideration of the petition, answer and demurrer, and on motion of Bell, Kendrick, Trinkle & Deeter, attorneys for the plaintiff, it is ordered and decreed that a peremptory mandamus issue to Edwin Clark, Chief of the Bureau of Building Inspection of the City of Philadelphia, and he is required to approve the plans submitted by the plaintiff in this case and to issue the proper permits for the structures therein proposed.